

2005 Decisions

**Opinions of the United States Court of Appeals for the Third Circuit**

8-17-2005

# Antonelli v. State of NJ

Precedential or Non-Precedential: Precedential

Docket No. 04-2573

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Antonelli v. State of NJ" (2005). *2005 Decisions.* Paper 598.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/598

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2573

———

DANIEL ANTONELLI; PATRICK M. BASIL; APRIL
BELO; FREDERICK P. BENDER, III; EDWARD J.
BENENATI, JR.; SCOTT BRONCO; JOSEPH F.
CAVALIERI; PATRICK CERNIGLIA; ROBERT M.
CHAMBERLAIN; DEREK COHEN; RAYMOND A.
CROSS; FRANCK DANIEL; SHAWN A. DEPOE; DENNIS
DOWHY; DAVID FIORE; MICHAEL P. HALLAHAN;
SCOTT PATRICK HENDERSON; PETER T. HENNEN;
JEFFREY L. IANNACONE; JOSEPH A. IVANICKI, JR.;
JASON JASOVSKY; ENOT MEDINA, JR.; MICHAEL
MITCHELL; ANTHONY MONGUSO; JUSTIN A. PELKA;
KARL M. PETERSON; STEVEN B. POLUMBO; JASON
PUSER; BRENDAN RHODES; CHRISTOPHER O. RILEY;
BRIAN SCHMITT; DANIEL C. SHERIDAN; ROBERT B.
SINTON; CHRIS A. SMITH; DENNIS STEINBERGER;
RAYMOND J. TANIS; JOSEPH TAYLOR, JR.; MICHAEL
S. WOHL; DANIEL ZUENA; NEW JERSEY STATE
FIREMEN'S MUTUAL BENEVOLENT ASSOCIATION
(D.C. Civil No. 00-cv-5725)

v.

STATE OF NEW JERSEY; UNITED STATES OF
AMERICA; JANICE MITCHELL MINTZ; HENRY

MAUER; LEWIS A. SCHEINDLIN; JOHN L. KRAUS, JR.;
ARTHUR E. BROWN, JR.; LINDA G. ROBINSON; JOHN
DOE; JOHN KRAUS; TERRY MITCHELL; eSELEX, INC.

———

NEW JERSEY STATE FIREMEN'S MUTUAL
BENEVOLENT ASSOCIATION
(Civil No. 00-cv-5813)

v.

STATE OF NEW JERSEY; UNITED STATES OF
AMERICA

———

MARK DEEGAN; PAUL FIGUEROA; TERRENCE D.
MAISANO; KATHERINE F. MATOS; JEAN-PAUL
OLIVIERI; ANGELO RIZZOLO; CHRISTOPHER T.
SAMONA; MARK R. SMITH
(D.C. Civil No. 01-cv-2621)

v.

STATE OF NEW JERSEY; JANICE M. MINTZ,
COMMISSIONER OF THE DEPARTMENT OF
PERSONNEL; JOHN DOES 1 THROUGH 5;
UNITED STATES OF AMERICA

———

Scott Bronco, Raymond A. Cross, Derek Cohen, David Fiore,

2

Michael P. Hallahan, Scott Patrick Henderson, Jeffrey L. Iannacone, Enot Medina Jr., Jason Jasovsky, Karl M. Peterson, Steven B. Polumbo, Jason Puser, Brendan Rhodes, Daniel C. Sheridan, Dennis P. Steinberger, Ronald J. Tanis, Joseph Taylor, Jr., Michael S. Wohl, and Daniel Zuena
<u>Appellants</u>

* (Amended - See Clerk's Order dated 8/10/04)

————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 00-cv-5725; 00-cv-5813; 01-cv-2621)
District Judge: The Honorable William H. Walls

————

Argued: June 29, 2005

Before: SLOVITER, FISHER and ALDISERT,
<u>Circuit Judges</u>

(Filed: August 17, 2005)

————

Robert J. Rohrberger (Argued)
Craig S. Gumpel
Benjamin Benson
FOX AND FOX LLP
70 South Orange Avenue
Livingston, New Jersey 07039
        Attorneys for Appellants

3

Lisa J. Stark (Argued)
R. Alexander Acosta, Assistant Attorney General
Dennis J. Dimsey
Sarah Harrington
Conor Dugan
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
    Attorneys for Appellees

Lisa D. Ruch (Argued)
Peter C. Harvey, Attorney General of New Jersey
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
    Attorneys for Appellees

———

OPINION OF THE COURT

———

ALDISERT, Circuit Judge.

This appeal from summary judgment entered by the United States District Court for the District of New Jersey requires us to decide whether the entry-level firefighter examination administered by the New Jersey Department of

Personnel (the "Department") in 1999 and 2000 (the "1999 Exam") violated the rights of Appellants Daniel Antonelli, et. al., under the Equal Protection Clause of the Fourteenth Amendment. Appellants are 27 individuals who failed the 1999 Exam because they did not achieve the cut-off score on a portion of the Exam.

Appellants contend that the 1999 Exam, which was designed to diminish the adverse impact on minority candidates, had a racially discriminatory impact on non-Hispanic Caucasian candidates. The District Court held that New Jersey did not act with discriminatory intent and that the 1999 Exam did not have a racially discriminatory impact. See Antonelli v. New Jersey, 310 F. Supp. 2d 700, 714-716 (D.N.J. 2004). We will affirm.

I.

In 1977, the United States filed a complaint in United States v. New Jersey, alleging that New Jersey and twelve cities were engaged in employment discrimination by denying equal employment opportunity to African-American and Hispanic applicants for entry-level firefighter positions. In 1980, the District Court entered a Consent Decree requiring the State and cities to undertake affirmative action to increase the proportion of African-American and Hispanic personnel in their fire departments. In 1990, the Court entered a Supplemental Consent Order.

Thereafter, the Department designed the 1999 Exam which consisted of three components: (1) Part I, a multiple-choice cognitive test designed to assess the ability to read and

perform basic math (the "cognitive component"); (2) Part II, a biographical questionnaire (the "biodata component"); and (3) Part III, a physical performance test (the "physical component"). Appellants contend that the method used by New Jersey to administer and score the biodata component violated their rights under the Equal Protection Clause.

Dr. Terry Mitchell designed the biodata component. He identified three broad categories of characteristics to be used in evaluating candidates: physical performance; cognitive performance; and teamwork. These three elements comprised the biodata component and it was Dr. Mitchell's understanding that the entire biodata component would constitute one-third of the overall exam score.

At a June 15, 1999 hearing before then-District Judge Politan, the principal issue was how the three components of the 1999 Exam should be weighed. Antonelli, 310 F. Supp. 2d at 707. The Court required the State and the United States to "attempt to agree on the use of the biodata instrument comprising the teamwork component by July 15, 1999." On July 30, 1999, Judge Politan ordered that "[t]he cognitive, teamwork and physical components of the entry-level firefighter examination developed by the State of New Jersey shall be scored, and the applicants' score on each of the three components shall constitute one-third of their total score for the purposes of ranking." Id.

The Department administered the cognitive and biodata components of the Exam in November 1999 and the physical component in early 2000. The same exam was given to all

6

candidates and the exams were scored using the same key. All candidates were required to achieve the same minimum cut-off score. To set the minimum cut-off scores, the Department analyzed whether various cut-off scores would have an adverse impact on candidates because of race or sex. The Department used the "four-fifths rule:" a selection rate for any race or sex that is greater than four-fifths the rate of the group with the highest rate will generally be regarded as evidence of no adverse impact. 28 C.F.R. § 5014 (2004). The cut-off rates so established resulted in a passing rate.

In June 2000, Judge Politan granted the State's motion for approval of the 1999 Exam. In January 2000, the Department informed Dr. Mitchell that he should prepare separate scores for each sub-part of the biodata component. The Department intended to score only the teamwork portion of the biodata component. Dr. Mitchell, however, objected to the use of only the teamwork questions and refused to write a report validating the results of the biodata component. Id. at 707-708.

When the candidates received their final scores, they also received a pamphlet explaining how the biodata component was scored and that "the questions relating to cognitive and physical skills were not graded, since these skills were measured by the other two parts of the firefighter test." Id. at 708.

This action arose from three actions consolidated into one case. The Appellants are 27 individuals who failed the 1999 Exam because they each scored less than a 46 (the cut-off score) on the biodata component. All but two of them describe themselves as non-Hispanic white or Caucasian. The New

Jersey State Firemen's Mutual Benevolent Association ("FMBA") is one of several fire service labor organizations in New Jersey. None of the individuals who took the 1999 exam were FMBA members.

The Appellants allege that the State, the Department and its officials ("Appellees") violated their rights to due process and equal protection, their rights under 42 U.S.C. § 1983 and their rights under the New Jersey Constitution and New Jersey civil service law. The Appellants also allege that the Appellees violated the Consent Decrees and the July 30, 1999 Order. The FMBA's Complaint contained similar allegations. The United States was named as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure.

The Appellees each brought a Motion for Summary Judgment and the Appellants brought a Cross-Motion for Summary Judgment. The District Court granted the Appellees' motion and denied the Appellants' cross-motion. The court held, inter alia, that: (1) the FMBA lacked standing; (2) the Appellants lacked standing to enforce the Consent Decrees and the July 30, 1999 Order; (3) except for the § 1983 claims against the New Jersey officials sued in their official capacities for prospective relief, the Appellants' remaining claims are barred by New Jersey's sovereign immunity; (4) Appellants cannot establish a violation of the Equal Protection Clause or the Due Process Clause of the Fourteenth Amendment; and (5) the Uniform Guidelines on Employee Selection Procedures do not create a cause of action.

8

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

We review a district court's order granting summary judgment de novo, applying the same test as the district court under Federal Rule of Civil Procedure 56(c). See Morton In'l, Inc. v. A.E. Staley Manuf. Co., 343 F.3d 669, 679 (3d Cir. 2003). Summary judgment is appropriate if the evidence shows that there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. The court does not weigh the evidence or assess its truth but simply determines whether or not there is a genuine issue for trial. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). In making this determination, the court must view the facts in the light most favorable to the non-moving party, and makes all reasonable inferences in its favor. Id. at 256.

## III.

The heart of this appeal is whether the 1999 Exam administered by the Department violated Appellants' rights under the Equal Protection Clause of the Fourteenth Amendment. In its comprehensive opinion, the District Court addressed other issues, including whether the FMBA had standing and New Jersey waived sovereign immunity. We will affirm the District Court's analysis on these issues and briefly discuss each in turn.

A.

The District Court correctly held that the Eleventh Amendment barred the Appellants' claims against the State and state officials except for the § 1983 claims against Department officials sued in their official capacities for prospective injunctive relief. Antonelli, 310 F. Supp. 2d at 712. The State did not waive its sovereign immunity under the Consent Decrees. See Bennett v. Atlantic City, 288 F. Supp. 2d 675, 682-683 (D.N.J. 2003) (holding that the State had not waived its sovereign immunity under consent decrees because the decrees did not evidence the explicit waiver needed to subject the State to the court's jurisdiction for federal civil rights claims).

B.

The District Court correctly held that the Appellants do not have standing to enforce the Consent Decrees or the July 30, 1999 Order because they were not parties to the Consent Decrees or Order, the Consent Decrees do not contemplate such action and the Appellants were not intended beneficiaries of either. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975) ("[A] consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it."); Cicirello v. N.Y. Tel. Co., 123 F.R.D. 523, 526 (E.D. Pa. 1989) (indicating that it is necessary to look to the consent decree itself to see whether it contemplates enforcement by non-parties).

C.

The District Court correctly held that we do not have jurisdiction over the FMBA's claims because it lacks standing. See Antonelli, 310 F. Supp. 2d at 710-711 (concluding that the FMBA did not have standing because it did not establish a cognizable injury to itself or its members). Even if the FMBA did have standing, we do not have jurisdiction because the FMBA failed to file a notice of appeal. See Rule 3(c)(1)(A), Federal Rules of Appellate Procedure (stating that the notice of appeal must name each party taking appeal in the caption or body of the notice).

D.

The District Court correctly held that the Department did not violate the Appellants' rights under the Due Process Clause of the Fourteenth Amendment because the Appellants do not have a protected property interest. See Antonelli, 310 F. Supp. 2d at 716. Further, collateral estoppel may bar the Appellants' claims under the Due Process Clause because a month before the Appellants filed their brief in this Court, a New Jersey appellate court affirmed a decision of the Merit Protection Board denying Appellants' administrative challenges to the 1999 Examination. See In the Matter of Steven T. Dill, et al., No. 2675-01T2 (App. Div. Sept. 2, 2004); In the Matter of Daniel Antonelli, et al., No. A-2675-01T2 (App. Div. Sept. 2, 2004); In the Matter of Brian Battel, No. 2678-01T2 (App. Div. Sept. 2, 2004). Although the New Jersey appellate court never specifically addressed due process, the issues underlying the Appellants' due process claims, access to examination materials

11

and the fairness of the 1999 Exam, formed the heart of the discussion in Dill.

## E.

Finally, the District Court correctly held that the State and state officials did not violate provisions of the Uniform Guidelines on Employee Selection Procedures, 28 C.F.R. § 50.14, because they are mere guidelines and do not establish a cause of action. See Antonelli, 310 F. Supp. 2d at 717.

## IV.

We now come to the heart of this appeal and analyze whether New Jersey violated the Appellants' rights under the Equal Protection Clause of the Fourteenth Amendment. This clause prohibits states from intentionally discriminating between individuals on the basis of race. Shaw v. Reno, 509 U.S. 630, 642 (1993). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188, 194 (2003) (internal citations and quotations omitted).

Intentional discrimination can be shown when: (1) a law or policy explicitly classifies citizens on the basis of race, see Hunt v. Cromartie, 526 U.S. 541 (1999); (2) a facially neutral law or policy is applied differently on the basis of race, see Yick Wo. v. Hopkins, 118 U.S. 356 (1886); or (3) a facially neutral law or policy that is applied evenhandedly is motivated by discriminatory intent and has a racially discriminatory impact, see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429

12

U.S. 252 (1977).

Discriminatory intent "implies that the decision-maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979). In light of the Supreme Court's affirmative action jurisprudence, it appears that one can also demonstrate intent by proving that the state took a particular course of action 'because of' its desire to benefit a particular racial group. See Richmond v. J.A. Croson Co., 488 U.S. 469, 493-494 (1989) and Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 226-227 (1995) (establishing that the government's 'benign' use of racial considerations in decision-making, i.e., the use of racial considerations in deciding to confer benefits upon an historically disadvantaged group, is no less subject to strict scrutiny than 'invidious' use of racial considerations in decision-making). But see Hayden v. County of Nassau, 180 F.3d 42, 50-51, 54 (2d Cir. 1999) (holding that proof that state action was taken 'because of' its beneficial effect on minority applicants for police officer positions was insufficient to establish discriminatory intent against non minority applicants and concluding that "race neutral efforts to address and rectify the racially disproportionate effects of an entrance examination do not discriminate against non-minorities").

Here, the 1999 Exam is facially neutral and the Appellants would have to show that the Appellees acted with discriminatory intent and the exam had a discriminatory impact. The Appellants cannot meet this burden.

13

The Appellants contend that the Department acted with discriminatory intent because it decided to score only the teamwork portion of the biodata component <u>after</u> the Exam was administered and had been analyzed. To support this contention, the Appellants rely on the notes and testimony of Louis Haszu, then-Department Manager of Public Safety Testing. His notes and testimony reflect that: (1) on July 19, 1999, he wrote that "[The Department] to use all-bio, 140 plus questions, and to score all," but he couldn't recall what that meant; and (2) on July 27, 1999, he wrote that "Art Brown/Gib Johnson spoke with Terry Mitchell and advised [that the Department] plans to use all bio-data and score all questions" and testified that this meant that "[a]t that point the Department was prepared to give the entire test to candidates, instead of just the teamwork questions."

The Appellants also reference part of the transcript of the June 15, 1999 hearing before Judge Politan.

THE COURT: The Biodata. What will we do with that? What has to be done with that?

MS. ACCURSO: It is done.

THE COURT: Done.

MS. THAWLEY: Yes your Honor. I don't think we actually have agreement as to how it will be used – which parts would be used.

14

THE COURT: You are to meet and agree on that by July 15th.

(Transcript of June 15, 1999 hearing at 67-68.)

The Appellants refer to an e-mail written by Dr. Paul Sackett to Joseph Denardo on May 10, 2000, which states: "So from an adverse impact perspective, the decision to focus on teamwork only, rather than using the total biodata score, seems to be a good one" as evidence that it was after the administration of the exam that the Department decided to use only the teamwork portion.

On this point, the Appellees emphasize that earlier in the June 15, 1999 hearing, counsel for the State twice announced that the Department intended to use and score only the teamwork questions of the biodata component. Counsel stated:

MS. ACCURSO: In further clarification, the State is only using Dr. Mitchell's work for the teamwork component of the test.

THE COURT: In other words, you have agreed now that you're going to use the teamwork component of Dr. Mitchell. You're going to use the physical test, whatever that is, and the cognitive test, whatever that is.

MS. ACCURSO: Correct.

(Transcript of June 15, 1999 hearing at 9.) Later in the hearing, counsel affirmed that "[t]he part that New Jersey is using is the teamwork."

15

We conclude that the Department decided to utilize only the teamwork portion of the biodata component before the administration of the 1999 Exam. Although the Appellants have presented some evidence that the Department had not finalized the scoring of the Exam after the June 15, 1999 hearing, Judge Politan's July 30, 1999 Order put an end to any confusion or question regarding the scoring of the Exam. The Order dictated that "[t]he cognitive, teamwork and physical components of the entry-level firefighter examination developed by the State of New Jersey shall be scored, and the applicants' score on each of the three components shall constitute one-third of their total score for the purposes of ranking." Except for Sackett's e-mail, the Appellants have not provided any evidence that the Department was still deciding how to weigh the components of the Exam after Judge Politan delivered the Order. Sackett's e-mail does not explain when the Department made its decision, but merely that the use of only teamwork was beneficial from an adverse impact perspective.

The evidence indicates that the 1999 Order, which dictated that the teamwork portion should constitute one-third of the total exam score, definitively fixed the composition of the 1999 Exam three months before its administration. At this point, the Department was obligated to weigh and score the Exam in accordance with the Order, giving the cognitive, physical and teamwork components equal weight. If the entire biodata component was scored, the cognitive and physical components would be afforded double weight. Accordingly, if the Department decided to use only the teamwork portion after the administration of the Exam it would have been in violation of the Order. Moreover, if the Appellants were dissatisfied with the

16

Order, they had an obligation to petition the Court for an amendment thereof. We conclude that the District Court was correct in determining that the Department's decision to use only the teamwork portion of the biodata was made prior to the administration of the Exam.

Because the Department decided to utilize only the teamwork portion of the biodata component before the administration of the 1999 Exam, there is no evidence that the Department acted with discriminatory intent.

Even if we were to conclude that the Department acted with discriminatory intent, the Appellants have not provided any evidence that the teamwork portion of the 1999 Exam had a discriminatory impact on white candidates. The passing rate on Part II, the teamwork component, was remarkably similar for African-American, Hispanic and white applicants and had no adverse impact on the basis of race. (See United States' Statement of Undisputed Facts at 17-18.) The mean scores for white, black, and Hispanic firefighter candidates on the teamwork component were 49.92, 50.21, and 49.19, respectively.[1] Accordingly, there is no evidence that the Exam had a discriminatory impact on white candidates.

* * * * *

_____

[1] The overall pass rate for firefighter candidates who took all three parts of the Exam was 61% for whites, 52% for blacks and 52% for Hispanics. (See United States' Statement of Undisputed Facts at 17-18.)

17

In sum, the Appellants have not raised any genuine issues of material fact that the Department violated their rights under the Equal Protection Clause of the Fourteenth Amendment. Because the July 15, 1999 Order definitely determined the composition of the 1999 Exam three months before its administration, we conclude that New Jersey decided to use only the teamwork portion before the administration of the Exam. There is, therefore, no evidence that the 1999 Exam was motivated by discriminatory intent. Even if there was evidence of discriminatory intent, there is no evidence of a discriminatory impact.

The judgment of the District Court will be affirmed.