OPINION OF THE COURT
FUENTES, Circuit Judge:
Appellants Carlos and Colleen Rodriquez appeal the final order of the District Court, which granted the City of Philadelphia’s motion for summary judgment. At the time when the events underlying this lawsuit took place, Rodriquez[1] was a police officer employed by the City of Philadelphia (the “City”). On September 7, 2005, Rodriquez was working the evening shift at the jail in the Ninth Police District when he was attacked by a prisoner. He filed this lawsuit, alleging that the City violated his substantive due process rights by exposing him to dangerous conditions of employment. The District Court granted the City’s motion for summary judgment, finding that Appellants failed to prove that the City violated Rodriquez’s constitutional rights. We will affirm.
I.
Because we write primarily for the parties, we only review the facts and procedural history necessary to resolve the issues raised on appeal. On the evening of September 7, 2005, Rodriquez was instructed to report to the Ninth Police District in order to cover the Closed Circuit Television Viewing (“CCTV”) section of the jail, where inmates wait to make appearances in court via video. Pursuant to a policy announced by the Commanding Officer of the District the week prior to the attack on Rodriquez, four officers were required to work in the CCTV section at any given time. When Rodriquez arrived for his shift, however, he believed that he was the only officer assigned to the section.[2] Rodriquez contacted a supervisor, Officer Lee, and expressed concerns over the inadequate coverage in the CCTV section. Lee explained that there was insufficient manpower to put additional officers in the CCTV area. Rodriquez continued to protest because he did not feel safe, and Lee informed Rodriquez that he would “see what [he] can do.” (App.229a.)
During Rodriquez’s shift, two prisoners — Brandon Cottle and Shawn Pendleton — were detained in the CCTV section’s Cell 8, a “suicide cell” covered in clear plexiglass that allowed officers to observe the actions of the detainees inside the cell. As Rodriquez tried to do paperwork, Cottle made repeated requests for water. Rodriquez initially ignored Cottle’s requests, but ultimately agreed to provide Cottle with water.
On account of the cell’s design, Rodriquez was unable to slip water through the food intake slot, and had to open the cell door to give the water to Cottle. Before he opened the door, Rodriquez ordered Cottle’s cellmate, Pendleton, to sit down; *712 Pendleton refused to comply at first, but eventually sat. After Rodriquez opened the door and gave Cottle the water, Pendleton “came out of nowhere” and stood in the cell doorway. (App.233a.) Rodriquez ordered Pendleton to go back into the cell, Pendleton refused, and a struggle between the two men ensued. During the confrontation, Pendleton picked Rodriquez up and threw him into the bars of the cell, causing Rodriquez momentarily to lose consciousness. Eventually, Officer Holden arrived and, in an apparent effort to contain the situation, shut the sliding door, locking Rodriquez in the cell with Cottle and Pendleton. Finally, Pendleton released Rodriquez, and Rodriquez was able to exit the cell. Rodriquez sustained severe injuries as a result of the attack.
Rodriquez commenced this lawsuit in August 2007, asserting that the City violated his substantive due process rights by creating the dangerous employment conditions to which he was exposed. The City moved for summary judgment. The District Court granted the motion, concluding that “a government employer owes no constitutional obligation to provide its employees with minimum levels of safety and security in the workplace,” (App.4a) (citing, inter alia, Collins v. City of Harker Heights, 503 U.S. 115, 127, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)), and that Rodriquez had failed to prove that a municipal policy or custom had caused his injuries. Rodriquez took this timely appeal.
II.
The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and we have jurisdiction under 28 U.S.C. § 1291. We review a grant of summary judgment de novo, applying the same standard as the district court. Antonelli v. New Jersey, 419 F.3d 267, 272 (3d Cir.2005). Summary judgment is appropriate if, viewing the record in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).
We agree with the District Court’s conclusion that although “[t]he facts of the case are indeed unfortunate,” they do not give rise to a substantive due process claim against the City. (App.3a.) We first observe that the Supreme Court has long held that “[njeither the text nor the history of the Due Process Clause supports ... [a] claim that the governmental employer’s duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause.” Collins, 503 U.S. at 126, 112 S.Ct. 1061. This holding stems from the well-settled principle that “the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens.” Kaucher v. County of Bucks, 455 F.3d 418, 431 (3d Cir.2006) (citing DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 195-96, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).
As we have recognized, however, under the exception to DeShaney known as the state-created danger doctrine, “when state authority is affirmatively employed in a manner that injures a citizen or renders him more vulnerable to injury from another source than he or she would have been in the absence of state intervention,” such affirmative conduct may give rise to a claim under the Due Process Clause. Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir.2006) (internal quotations and citations omitted, emphasis added); see also Sanford v. Stiles, 456 F.3d 298, 304 (3d Cir.2006) (under the state-created danger doctrine, “liability may attach where the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process”) (emphasis in origi *713 nal). To prevail on a state-created danger claim, a plaintiff must establish the following four elements:
(1) the harm ultimately caused was foreseeable and fairly direct;
(2) a state actor acted with a degree of culpability that shocks the conscience;
(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant’s acts ...; and
(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.
Bright, 443 F.3d at 281 (quotations and footnotes omitted).
As in Bright, “we find it unnecessary to consider anything other than the fourth essential element of a meritorious state-created danger claim,” id., because the record herein fails to suggest that the City’s affirmative use of state authority caused the danger Rodriquez encountered. At base, Rodriquez’s claim turns on his contention that the City could have done more to prevent dangerous circumstances from arising in the CCTV area, or that the City was negligent in enforcing certain security measures that would have enhanced officer safety.[3]
Such contentions are insufficient as a matter of law to establish that the City’s affirmative exercise of authority created the danger to which Rodriquez was exposed. See Kaucher, 455 F.3d at 433. We have previously considered similar attempts by litigants to “recharacterize [a state actor’s] failures as affirmative actions,” and have consistently held that a plaintiff must show more than the government’s “failure to prevent” an injury in order to prevail on a state-created danger claim. Sanford, 456 F.3d at 312 (quotations omitted); see Kaucher, 455 F.3d at 433 (employee’s contention that “defendants failed to act affirmatively to improve conditions at the jail,” although “frame[d] ... in terms of actions affirmatively creating dangerous conditions and affirmatively misrepresenting dangers,” failed to establish the affirmative act element). Rodriquez’s claim boils down to a charge that “[t]he city breached its duty of care to ... [him] by failing to provide a safe work environment,” and, as a matter of law, such a charge does not suffice to establish a due process violation.[4] Collins, 503 U.S. at 128, 112 S.Ct. 1061. We conclude, in sum, that the District Court correctly determined that Rodriquez failed to prove that the City violated his constitutional rights.
III.
For the foregoing reasons, we will affirm the District Court’s grant of summary judgment in favor of the City.

. For simplicity, we refer to Mr. Rodriquez as "Rodriquez" or "Appellant.” Mr. Rodriquez’s wife, Colleen Rodriquez, is a party to this action, but she asserts only a loss of consortium claim which is derivative of her husband’s claim. See O'Connor v. City of Newark, 440 F.3d 125, 130 n. 8 (3d Cir.2006).

. Rodriquez’s belief that he was the only officer working in the CCTV area turns out not to have been correct. Officer Holden was also on duty in the section during Rodriquez’s shift, although Rodriquez was not aware of his presence when he spoke to Officer Lee. Another officer, Officer Sabalski, was supposed to be in the CCTV section as well, but had either not shown up for work or had stepped out of the building.

. In support of his claim, Rodriquez points to a report prepared by his expert witness, Roosevelt L. Poplar, which identifies multiple failings Mr. Poplar attributes to the City: the City permitted mentally unstable prisoners to be housed in a poorly designed suicide cell, it failed to correct inadequate staffing in the CCTV section, it allowed officers to store tasers on a different floor from the CCTV section, and it tolerated the sub-optimal placement of a video monitor. (App.209a.)

. We note that Officer Holden appears to have taken an affirmative act when he locked Rodriquez in the cell with Pendleton. However, Holden is not a defendant to this action, and there is no suggestion whatsoever from the record before us that in closing the door to the cell, he was acting pursuant to a municipal policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).