**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2498
_____

THOMAS J. CONWAY, IV,
                                                            Appellant

v.

U.S. BANK NATIONAL ASSOCIATION,
as trustee for structured asset securities corporation, structured asset investment
loan trust, mortgage pass-through certificates, series 2005-2;
OCWEN LOAN SERVICING, LLC, ET AL.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:18-cv-04916)
District Judge: Honorable Mark A. Kearney
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on February 24, 2020

Before: JORDAN, BIBAS, and PHIPPS, <u>Circuit Judges</u>

(Opinion filed: March 6, 2020)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Thomas Conway, IV, appeals the District Court's order dismissing his complaint. For the reasons set forth below, we will affirm the District Court's judgment.

According to his operative second amended complaint, in 2004, Conway obtained a mortgage loan from Finance America, LLC, in the amount of $80,000. In 2014, Finance America assigned the loan to U.S. Bank; the loan was then serviced by Ocwen Loan Servicing LLC. At some point, Conway stopped making payments on the loan, and in April 2014, U.S. Bank filed a foreclosure action in the Philadelphia County Court of Common Pleas. The Court of Common Pleas granted summary judgment to U.S. Bank and authorized it to sell the property at a sheriff sale.

Shortly before the scheduled sale, Conway paid $19,827.99 to U.S. Bank and U.S. Bank canceled the sheriff sale and reinstated the loan. Nevertheless, Ocwen has still attempted to collect $10,737.54 in fees and charges that Conway had accrued. In his second amended complaint, Conway claimed that U.S. Bank's and Ocwen's conduct in continuing to try to collect these fees after he had reinstated his loan, and in informing credit agencies of his failure to pay these fees, violated his rights under Pennsylvania's Loan Interest and Protection Law.[1] The District Court granted the defendants' motion to dismiss the second amended complaint, and Conway appealed.

We have jurisdiction under 28 U.S.C. § 1291.[2] We exercise a plenary standard of

---

[1] In earlier iterations of his complaint—including the initial complaint, which the defendants removed to federal court, see D.C. Dkt. No. 1—Conway also asserted claims under various federal statutes. He has not challenged the District Court's dismissal of those claims in his brief, and we therefore will not address those claims here.

[2] The District Court had diversity jurisdiction because the parties were citizens of different states and Conway's claimed damages—the fees discussed in this opinion as well as

review. Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). In reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). On appeal, we will consider only those issues that Conway raised in his opening brief. See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes 'a passing reference to an issue . . . will not suffice to bring that issue before this court.'" (alteration in original) (quoting Simmons v. City of Philadelphia, 947 F.2d 1042, 1066 (3d Cir. 1991) (opinion of Becker, J.))).

Conway's second amended complaint and appellate brief focus on his argument under Pennsylvania's Loan Interest and Protection Act, 41 Pa. Stat. & Cons. Stat. §§ 101–605, which is often referred to as "Act 6." Act 6 provides that up until one hour before a sheriff sale, the debtor may cure a default and prevent the sale by paying the overdue principal and interest as well as reasonable late penalties and fees. See id. § 404. "Cure of a default

---

additional allegations of financial loss of greater than $100,000, see D.C. Dkt. No. 27, ¶ 118—satisfy the amount-in-controversy requirement. See 28 U.S.C. § 1332. Moreover, as stated above, Conway originally presented federal claims that conferred jurisdiction under 28 U.S.C. § 1331. See supra note 1. See generally Rockwell Int'l Corp. v. United States, 549 U.S. 457, 474 n.6 (2007).

pursuant to this [provision] restores the residential mortgage debtor to the same position as if the default had not occurred." Id. § 404(c). Conway argues that when he made his $19,827.99 payment to U.S. Bank, he cured his default and was then entitled to be placed in the same position as if he had never defaulted—which, he contends, should mean that all late penalties and associated fees must be eliminated.

Pennsylvania law, however, does not support his position. First, section 404 itself provides that to cure the default, the debtor must pay reasonable fees and late penalties. See 41 Pa. Stat. & Cons. Stat § 404(b)(3)–(4); see also JP Morgan Chase Bank N.A. v. Taggart, 203 A.3d 187, 195 (Pa. 2019); Irv Ackelsberg, Residential Mortgage Foreclosure: Pennsylvania Law and Practice § 4.2.3 (2d ed. 2014).[3] Moreover, Conway has presented no authority, and we have found none, suggesting that a payment of principal and interest extinguishes all other fees and penalties. To the contrary, the Commonwealth Court has ruled that a sheriff may collect fees associated with a sheriff sale under section 404(b) even after the debtor cures the default and the sale is canceled. See Ashbridge Oil Co. v. Irons, 554 A.2d 629, 631 (Pa. Commw. Ct. 1989). Accordingly, we will affirm the District Court's dismissal of Conway's claims that the defendants violated Act 6 by seeking to collect and reporting Conway's failure to pay various penalties and fees.

Conway also argues that Ocwen violated terms of a consent judgment that it entered

---

[3] Section 404 limits allowable late penalties and fees to those that are "reasonable," but Conway has not meaningfully challenged any individual penalty or fee as unreasonable. Further, Conway has not alleged that the defendants agreed to waive the penalties and fees when he made his payment, and, in fact, states that he "did not sign any documents relating to the reinstatement." Appellant's Br. 6.

4

into with the Consumer Financial Protection Bureau and numerous states. As the District Court explained, however, nonparties are typically not entitled to enforce consent judgments. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975) ("[A] consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it."); Antonelli v. New Jersey, 419 F.3d 267, 273 (3d Cir. 2005); see also CFPB v. Ocwen Fin. Corp., No. 13-2025 (RMC), 2014 WL 12772262, at *2 (D.D.C. Dec. 16, 2014) (relying on this principle to deny an individual's request to intervene in the action that culminated in the consent judgment upon which Conway relies). Conway argues that the consent judgment "related to his state claims," Appellant's Br. 14, but he has neither argued nor shown that the consent judgment created rights that could be enforced by third parties. See id.; see also SEC v. Prudential Sec. Inc., 136 F.3d 153, 159 (D.C. Cir. 1998) ("The test is not, as appellants appear to suggest, only whether the contracting parties intended to confer a benefit directly on the third parties, but also whether the parties intended the third party to be able to sue to protect that benefit.").

Accordingly, we will affirm the District Court's judgment.