**Paul F. MCELROY, Appellant**

v.

**SMITHKLINE BEECHAM HEALTH & WELFARE BENEFITS TRUST PLAN FOR U.S. EMPLOYEES; SmithKline Beecham; Unum Provident Corporation**

No. 02–3421.

United States Court of Appeals, Third Circuit.

Argued May 21, 2003.

Filed Aug. 6, 2003.

Barbara J. Holland (Argued), Conshohocken, PA, Counsel for Appellant.

Brian T. Ortelere (Argued), Michael J. Eagles, Morgan, Lewis & Bockius, Philadelphia, PA, Counsel for Appellees.

BEFORE: SCIRICA, Chief Judge, SLOVITER, and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

In this disability benefits case, appellant Paul McElroy, who had been an employee of SmithKline Beecham, challenged the plan administrator's interpretation of the SmithKline Beecham Long Term Disability Plan. The plan administrator concluded that certain Railroad Retirement Board disability benefits ("RRB benefits") should be deducted from McElroy's long-term disability payments. The District Court granted summary judgment in favor of SmithKline, holding that the plan administrator's reading of the Plan—that the offset for "state disability benefits or similar government benefits" includes McElroy's RRB benefits—was reasonable. We agree with the District Court, and will therefore affirm.

I.

From 1965 until 1996, McElroy worked for Consolidated Rail Corporation as a computer system analyst. In 1996, McElroy left Conrail to work for SmithKline Beecham's Clinical Laboratories. The benefits package provided by SmithKline included basic long-term disability benefits. The Plan provided that the following disability payments received by the beneficiary would offset the SmithKline dis-

ability payment "dollar for dollar": (1) Primary Social Security benefits; (2) Worker's Compensation or Occupational Disease Law; (3) State disability benefits or similar government benefits; and (4) Benefits received from the SmithKline Beecham Pension Plan. At issue here is the phrase "State disability benefits or similar government benefits."

Because of a heart condition, McElroy became disabled in February 1997, at which time he filed a claim with Smith-Kline for long-term disability benefits. When SmithKline denied the claim, citing a preexisting condition, McElroy appealed SmithKline's denial and brought suit against SmithKline in 1999. The parties settled in July 2000, and McElroy was reinstated to the SmithKline Plan.

By this time, McElroy had begun receiving a disability annuity of $2,023.15 pursuant to the Railroad Retirement Act, as a result of his prior employment with Conrail. SmithKline notified McElroy that the plan administrator had concluded that these RRB benefits triggered an offset to reduce his disability payments.

McElroy appealed the plan administrator's decision, but the plan administrator denied the appeal, concluding that because the RRB benefit payments were a "similar government benefit" under the Plan, they should be deducted from the Plan payment. McElroy initiated this lawsuit in the United States District Court for the Eastern District of Pennsylvania. The District Court granted SmithKline's motion for summary judgment and denied McElroy's cross-motion for summary judgment.

## II.

Before we can evaluate the propriety of the plan administrator's determination, we must decide whether the District Court properly applied the deferential "ar-bitrary and capricious" standard of review. The Supreme Court has instructed us to review the determination of a plan administrator *de novo* unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

Here, the SmithKline Plan clearly granted the plan administrator discretion to construe its terms:

> SmithKline Beecham reserves the absolute right to interpret the provisions of the SB Pension Plan, Retirement Savings Plan and all welfare benefit plans, to make determinations of fact and eligibility for benefits, and to decide any dispute that may arise regarding the rights of employees, and their dependants or beneficiaries, under these plans. Any such determinations shall apply uniformly to all persons similarly situated and shall be binding and conclusive upon all interested persons.

App. at 109. Nevertheless, McElroy asserts that review of the decision should be *de novo* for other reasons.

First, McElroy contends that, because the plan administrator did not review SmithKline's claims processing documents or McElroy's claim file in making his determination, *Moench v. Robertson* compels us to find that his decision is not entitled to any deference. 62 F.3d 553, 567 (3d Cir.1995). According to *Moench,* if a plan administrator, "without knowledge of or inquiry into the relevant circumstances and merely as a result of his arbitrary decision or whim exercises or fails to exercise a power, the court will interpose." *Id.* at 568. In *Moench,* which involved a decision by a committee that administered an employee stock ownership plan, we found

that there was "nothing in the record demonstrating that . . . the [c]ommittee . . . actually deliberated, discussed or interpreted the [employee stock option ownership] plan." *Id.* at 567.

In this case, however, the plan administrator did interpret the plain language of the Plan as to whether the meaning of the phrase "similar government benefits" in the Plan's offset provision included McElroy's RRB benefits. The plan administrator considered the plain language of the Plan, as well as a letter from counsel for the RRB, which characterized McElroy's RRB annuity as a "government disability benefit." App. at 145. In addition, in response to McElroy's use of an opinion from the Court of Common Pleas of Schuylkill County, *Asief v. Commonwealth of Pennsylvania*, No. S–331 (Schuylkill County Dec. 22, 1975), to argue that the RRB benefits were retirement benefits rather than disability benefits, the plan administrator distinguished *Asief* on several grounds. We conclude that here there are sufficient indicia that the plan administrator did actually deliberate and interpret the plan. Hence, *Moench* is inapplicable.[1]

McElroy also argues that the plan administrator's decision does not warrant deference because he "failed to discharge his duties solely in the interest of plan participants and beneficiaries and for the exclusive purpose of providing benefits." Appellant's Br. at 26. But this contention overstates the plan administrator's responsibility. The plan administrator's duty to administer a plan for the sole benefit of its participants is qualified by his obligation to interpret a plan consistent with the documents and instruments governing the plan. 29 U.S.C. § 1104(a)(1)(D); *O'Neil v. Re-*

*tirement Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 61 (2d Cir. 1994) (explaining that the plan administrator is not obligated to "resolve every issue of interpretation in favor of the plan beneficiaries").

### III.

According to the plain language of the offset provision of the Plan, Smith-Kline is permitted to deduct from Plan benefits any payments that a beneficiary receives from:

— Primary Social Security benefits (your benefit only);

— Worker's Compensation or Occupational Disease Law (including any lump sum payments);

— State disability benefits or similar government benefits; or

— Benefits received from the Smith-Kline Beecham Pension Plan.

App. at 100. At issue here is the phrase "or similar government benefits." The plan administrator interpreted the phrase "similar government benefits" to include McElroy's RRB benefits. We must decide whether the plan administrator's interpretation of the Plan is reasonable. *See Abnathya v. Hoffmann–LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir.1993) (stating that a decision of a plan administrator may only be overturned if it is "without reason, unsupported by the evidence or erroneous as a matter of law"). Because McElroy's RRB benefits, like state disability benefits, are disability benefits paid by a "government" agency, we conclude that the plan administrator's reading is not "without

---

1. McElroy also complains that the plan administrator "failed to ask SmithKline's own legal counsel for an opinion of the interpretation." Appellant's Br. at 24. This argument is meritless. No legal precedent requires plan administrators to refer questions to company counsel.

reason, unsupported by the evidence or erroneous as a matter of law." *Id.*[2]

■ McElroy argues that the plan administrator's reading of the Plan's offset provision conflicts with *In re: Unisys Corp. Long Term Disability Plan ERISA Litigation*, where we held that a plan must specify which benefits are to be considered in an offset provision. 97 F.3d 710 (3d Cir.1996). In *Unisys*, the defendant drafted a new long term disability plan which provided that benefits received by employees could be adjusted if the employees received pension benefits from other sources. After the original publication of the plan, the plan was revised to state that benefits were subject to reduction by amounts of any dependents' Social Security awards. The plaintiffs, employee participants of the plan, argued that only benefits they themselves received should be deducted from plan benefits. Defendants argued that this new language expressed a continuation, rather than a change of an existing provision. The district court granted summary judgment in favor of defendants. On appeal, we examined the language of the plan and reversed the district court. We concluded, "There is no evidence in the record which supports Unisys' argument that the words 'benefits you receive' are susceptible of meaning 'benefits you and your dependents receive.'" *Id.* at 715. Significantly, however, we held that the language from the provision at issue that did not refer to a plan participant's dependents was "unambiguous." *Id.* at 717. Because the language was "unambiguous," we were as able as the plan administrator to determine which benefits were specified by the plan.

*Unisys* does not control in this case, because, unlike *Unisys*, here the language of the SmithKline Plan is ambiguous. Because the language of the SmithKline Plan is equivocal, the plan administrator was authorized to interpret it, and we must defer to this interpretation unless it is arbitrary or capricious. We conclude that the plan administrator's interpretation of the Plan is neither and, hence, reasonable.

## IV.

■ McElroy also asserts that because the plan administrator did not review his claim file in making his determination, he shirked his duties, as enumerated in 29 U.S.C. § 1104(a)(1)(D) and 29 C.F.R. § 2560.503–1(h)(2)(iv). An examination of these ERISA provisions, however, shows that the plan administrator did not fail to meet his fiduciary obligations.

Section 1104(a)(1)(D) states that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV." 29 U.S.C. § 1104(a)(1)(D). Clearly, the "documents and instruments governing the plan" do not necessarily include all relevant documents and, in particular, do

---

**2.** The parties disagree as to whether the usual or a heightened arbitrary and capricious standard of review should be applied. *Compare Smathers v. Multi–Tool, Inc.,* 298 F.3d 191 (3d Cir.2002) (holding that an employer that both administered and funded a plan created a conflict of interest that required a heightened standard), *with Romero v. SmithKline Beecham,* 309 F.3d 113 (3d Cir.2002) (holding that since the plaintiff "failed to adduce evidence that a potential payout of approximately $50,000 in benefits by SmithKline, a company with $12.5 billion in revenues in 1999, created a conflict," a heightened arbitrary and capricious standard was not warranted). We do not have to reach this issue, however, because we hold that the plan administrator's decision was reasonable regardless of whether the usual or a heightened arbitrary and capricious standard of review is applied.

not necessarily include the plaintiff's claim file.

■ Section 2560.503–1(h)(2)(iv) states: [T]he claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures ... [p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

29 C.F.R. § 2560.503–1(h)(2)(iv). McElroy, who did not submit his claim file to the plan administrator, states that this provision requires that "a full and fair review include all relevant documents." Appellant's Br. at 29. This is simply not true. Only those "comments, documents, records, and other information" that are "submitted by the claimant" must be reviewed.

Finally, McElroy contends that the plan administrator failed to follow the due process requirements of ERISA because the plan administrator's "initial benefit reduction letter failed to inform Mr. McElroy of the reason for the benefit reduction or the Plan provision on which the Plan Administrator relied." Appellant's Br. at 31. But this assertion that McElroy could not effectively set forth an argument in opposition to the plan administrator is meritless. The "initial benefit reduction letter" to which McElroy refers does not explain the reason for the offset because SmithKline had already explained the reason. In an August 14, 2000 letter, SmithKline notified McElroy that under the Plan it reserved the right to reduce any long-term disability award by any "state disability or similar government benefits," and that "[s]ince the

RRB is an agency of the United States government, Mr. McElroy's RRB disability annuity is a 'similar government benefit,' and Mr. McElroy's long term disability award should be reduced by the amount of his RRB benefit." Supp.App. at 3–4.

V.

For the foregoing reasons, we will affirm the District Court's decision.