James OTTO; Shirley A. Otto; Fred P. Grove; Ethyl J. Grove, Appellants,

v.

WESTERN PENNSYLVANIA TEAM-STERS AND EMPLOYERS PENSION FUND; Board of Trustees of Western Pennsylvania Teamsters and Employers Pension Fund.

No. 04–2307.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 24, 2005.

Decided Feb. 11, 2005.

Konrad Kuczak, Dayton, OH, for Appellant.

Charles J. Streiff, Wick, Streiff, Meyer, O'Boyle & Szeligo, Pittsburgh, PA, for Appellee.

Before SCIRICA, Chief Judge,
RENDELL and FISHER, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Chief Judge.

Invoking ERISA, 29 U.S.C. § 1001 *et seq.*, Appellants challenge the calculation of their pension benefits by the Western Pennsylvania Teamsters and Employers Pension Fund ("the Fund"). The Magistrate Judge held the Fund's calculation of benefits was proper and granted summary judgment in its favor.[1] We will affirm.

### I.

Because we write only for the parties, an abbreviated recitation of the facts will suffice. Appellants James Otto and Fred P. Grove are retired participants in the Western Pennsylvania Teamsters and Employers Pension Fund. Their wives, also Appellants, are beneficiaries entitled to survivor benefits under the plan. Over the course of their respective teamster careers, Otto and Grove worked for several employers under several different labor contracts, resulting in a complex matrix of pension fund contributions. Specifically, Mr. Otto is credited with twenty-six years of service at fourteen different employer contribution rates. Mr. Grove is credited with over nineteen years of service at ten different contribution rates.

The Fund itself, in existence since 1958, is a pension trust administered by a ten-member board of trustees. The board is comprised of five members appointed by contributing employers and five members appointed by local teamster unions. The trustees are fiduciaries under 29 U.S.C. § 1104(a)(1) and are required to discharge their duties solely in the interest of the participants and beneficiaries of the Fund. Operation of the Fund is governed by a trust agreement and by the terms and conditions of the corresponding pension plan—both of which are summarized for participants in a summary plan description. *See* 29 U.S.C. § 1022 (requiring that participants receive a summary plan description). According to the trust agreement, the trustees have "full and exclusive

---

1. The parties consented to proceedings before a Magistrate Judge under 28 U.S.C. § 636(c)(1).

authority" to resolve controversies arising under the plan and to construe the terms and conditions of the plan.

Upon their retirement, in 1999 and 2001 respectively, Otto and Grove applied for a pension. The Fund actuary determined that Mr. Otto was entitled to a monthly benefit of $1,080.65 and that Mr. Grove was entitled to $535.50.[2] In both cases, the Fund calculated the monthly benefit according to a "unit multiplier" formula, under which the applicant's years of teamster service are multiplied by a factor corresponding to the employer contribution rates for the relevant period of service. In other words, the Fund multiplied Otto and Grove's years of service at a given employer contribution rate by the "unit multiplier" corresponding to that rate. Mr. Otto's monthly pension was based on fourteen different multipliers, while Mr. Grove's was based on ten different multipliers.

Mr. Otto and Mr. Grove disagreed with the Fund's calculation and, as authorized under the plan, appealed to the trustees. After hearings on the matter, a trustee sub-committee submitted a report to the trustees recommending the appeals be denied. The trustees, at their October 9, 2002 meeting, adopted the sub-committee recommendations and unanimously denied the appeals. Otto and Grove were informed of the decision by letter, and were subsequently provided with a written explanation from the Fund's counsel of the basis for the trustees' action.

Having exhausted all remedies under the trust agreement, Otto and Grove filed suit under ERISA § 502(a) in the District Court for the Western District of Pennsyl-

vania. *See* 29 U.S.C. § 1132(a)(1)(B) (providing federal cause of action "to recover benefits due" under an employee benefit plan); 29 U.S.C. § 1132(e)-(f) (conferring federal jurisdiction). By consent of the parties, and pursuant to 28 U.S.C. § 636(c)(1), the case was assigned to a Magistrate Judge, who on cross-motions for summary judgment entered judgment in favor of the Fund. We have jurisdiction under 28 U.S.C. §§ 636(c)(3) and 1291. Our review is plenary. *Stratton v. E.I. Du-Pont De Nemours & Co.*, 363 F.3d 250, 253 (3d Cir.2004).

## II.

The issue is whether the Fund's method of calculating pension benefits is contrary to the terms of the pension plan and/or contrary to ERISA. *See Smith v. Contini*, 205 F.3d 597, 602 (3d Cir.2000) ("We are required to enforce the plan as written unless we can find a provision of ERISA that contains a contrary directive.") (citations omitted). Appellants challenge the Fund's pension formula, contending the plan requires a calculation based solely on the unit multiplier corresponding to the contribution rate of the applicant's last employer. For Mr. Otto, this alternate methodology would increase his monthly Western Pennsylvania Fund benefit (without adjustment for survivor benefits) from $1,080.65 to $3,003.21. Mr. Grove's monthly benefit (without survivor adjustment) would increase from $535.50 to $1,206.33.[3]

### A.

Absent evidence of a structural conflict of interest on the part of the plan adminis-

---

**2.** These amounts represent the pension contribution (without adjustment for survivor benefits) of the Western Pennsylvania Teamsters Fund. Mr. Otto and Mr. Grove are entitled to additional reciprocal benefits from the Central Pennsylvania Teamsters Fund. According to the Western Pennsylvania Fund calcula-

tions, Mr. Otto and Mr. Grove are entitled to total monthly pension benefits—including Central Pennsylvania Fund contributions—in the amount of $2,006.78 and $1,104.13, respectively.

**3.** The methodology advocated by Appellants would also increase their reciprocal monthly

trator, see *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377 (3d Cir.2000), we apply "the deferential 'arbitrary and capricious' standard" in reviewing the discretionary decisions of an ERISA plan administrator. *McElroy v. SmithKline Beecham Health & Welfare Benefits Trust Plan*, 340 F.3d 139, 141 (3d Cir.2003). Here, the plan expressly vests the trustees with "full and exclusive authority" to interpret the plan and to resolve controversies arising under it. There is no evidence of a conflict of interest. The board, which in this case voted unanimously, is jointly comprised of employer and teamster trustees with a fiduciary duty to manage the trust for the benefit of plan participants and beneficiaries. Trustee decisions under this framework—which is far removed from the structural conflict we observed in *Pinto*—warrant deferential arbitrary and capricious review. *Bill Gray Enters., Inc. Employee Health and Welfare Plan v. Gourley*, 248 F.3d 206, 216 (3d Cir.2001) (absent "specific evidence of bias or bad-faith," discretionary plan decisions are reviewed under the arbitrary and capricious standard).[4]

## B.

The plan provision at issue, Section 4.4(a), reads as follows:

> The monthly amount of Normal Pension granted a retiring Participant eligible for such benefit ... shall equal the product of (1) the Unit Multiplier determined in accordance with Appendix A herein, and (2) the Credited Service period of such Participant, both factors to be determined as of the Participant's Termination Date.

Notwithstanding the parties' "plain meaning" arguments, Section 4.4(a) is ambiguous.[5] It simply does not speak to the relevant question—whether monthly pension benefits are calculated using a single "unit multiplier" corresponding to the applicant's last employer contribution rate, or using a variety of "unit multipliers" corresponding to the contribution rate at the relevant employment termination dates.[6] Faced with an ambiguous provision, we review whether the trustees' interpretation is reasonable. *Gourley*, 248 F.3d at 218.

We agree with the Magistrate Judge that it is reasonable. In the trustee sub-

benefit from the Central Pennsylvania Fund. *See supra* note 1. Mr. Otto's total monthly benefit (without survivor adjustment) would increase from $2,006.78 to $5,577. Mr. Grove's total monthly benefit (without survivor adjustment) would increase from $1,104.13 to $2,487.27.

4. Appellants contend "arbitrary and capricious" deference is inappropriate because the trustees explained their decision in a letter from counsel. In Appellants' view, the trustees' "delegation" of this duty suggests that counsel rather than the trustees decided the appeal. Appellants cite *Moench v. Robertson*, 62 F.3d 553, 567 (3d Cir.1995) as precluding deference unless the plan administrator "in fact" interprets the plan. Their argument lacks merit. First, the record demonstrates that a trustee sub-committee prepared a report and recommendation on Appellants' claims, and that the trustees themselves re-

viewed and unanimously adopted the sub-committee report. Second, Appellants fail to cite a single case in support of the proposition that "delegation" of legal correspondence to counsel deprives the trustees of the deference to which they are otherwise entitled. It is neither remarkable nor objectionable that the Fund employed counsel to assist in the analysis of a legal question and subsequently to communicate, on behalf of the trustees, the legal basis for a benefits decision.

5. The Magistrate Judge implicitly concluded Section 4.4(a) is ambiguous, then expressly held that the Fund's interpretation is reasonable.

6. Nor does Appendix A resolve the question. Appendix A sets forth the method for determining and adjusting "unit multipliers," but does not explain whether a single multiplier or a combination of multipliers are employed in calculating benefits.

committee's report and recommendation on the Otto/Grove appeal, which the trustees reviewed and unanimously adopted, the sub-committee cited as justification for the Fund's methodology the benefit calculation examples found in the summary plan description. One of these examples illustrates the calculation methodology employed by the Fund in determining Appellants' benefits. Because this example is included in the summary plan description, it represents an authoritative interpretation of Section 4.4(a) and is binding on both the trustees and the plan participants. *Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. and Research Found.*, 334 F.3d 365, 382 (3d Cir.2003) (holding summary plan description is a binding element of the plan). In sum, the trustees' methodology is a reasonable interpretation of Section 4.4(a) and is consistent with the approach explained in the summary plan description.[7]

Appellants also object to the specific rate multipliers used to calculate their benefits, contending the Fund applied multipliers different from those found in Table 3 of the summary plan description. We are puzzled by Appellants' position on this issue, because the purported discrepancy appears to cut in their favor. The multipliers actually employed by the Fund are higher than those found in Table 3—yielding a larger monthly benefit than Appellants would otherwise be entitled to receive. In any event, the discrepancy is justified. Appendix A to the plan authorizes (indeed requires) case-specific adjustments to the unit multiplier based on the applicant's employer contribution rate. Where an employer contributed to the pension fund at a specific rate, the Fund adjusts the corresponding unit multiplier accordingly. Appellants cite no evidence that the Fund erred under Appendix A in its adjustments. Moreover, given that the Fund appears to have adjusted the unit multipliers upward from those listed in Table 3—to the benefit of Appellants—we find nothing arbitrary or capricious in its decision.

Appellants' remaining challenges—including objections based on judicial estoppel, 29 U.S.C. § 1022 (requiring that the summary plan description be understandable to the average participant), and the Fund's 1995 denial of reciprocal Central Pennsylvania Fund benefits to Mr. Grove—are without merit and must fail.

### III.   Conclusion

We will affirm the judgment of the Magistrate Judge.

---

7. In finding the trustees' interpretation reasonable, the Magistrate Judge also relied on two affidavits—one from Gerri Talerico, the Fund's office manager, who stated the Fund has followed the same method of calculating benefits since at least 1991, and one from Randee W. Sekol, the Fund's actuary, who explained that Otto and Grove's benefits were calculated under a rate schedule established by national teamster/employer negotiations. Appellants challenge this evidence as beyond the record before the trustees and, therefore, as inadmissible. Appellants are correct that judicial review of benefit decisions ordinarily "should be based on the record available to the plan administrator in making its own decision." *Kosiba v. Merck & Co.*, 384 F.3d 58, 69 (3d Cir.2004). But this does not establish a categorical rule of inadmissibility in ERISA cases. Evidence beyond the administrative record may in certain circumstances be relevant and admissible as to issues that were not before the plan administrator—such as trustee conflict of interest, bias, or a pattern of inconsistent benefits decisions. *See id.* at 67 n. 5. In this case, however, we need not decide whether the Magistrate Judge erred in considering the affidavits, because irrespective of the disputed evidence, the trustees' interpretation of the plan is reasonable.