**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2530
_____

WILLIAM HARRIS,
Appellant

v.

J. E. POSKA, Sgt.; C. PARKER, Lieutenant; BRIAN V. COLEMAN, Supt.;
SCOTT NICKELSON, Major; RHONDA A. HOUSE, Grievance Coord.;
WALKER, Captain; STEVE BUZAS, RHU Unit Manager; J. M. SKROBACZ,
Correction Officer; ROHAL, Lieutenant; D. D. SMITH, Correction Officer;
STEVEN M. GATES, Deputy Supt.; ERIC T. ARMEL, Deputy Supt.;
BURTON, Lieutenant; SWITZER, Lieutenant; ROBERTS, Correction
Officer; DOBISH, Sgt.; WENTZEL, Correction Officer; SUSAN BERRIER,
Correction Health Care Administrator; ALICE MAKSIN, Nurse Practitioner;
TREVOR A. WINGARD, Superintendent; WADSWORTH, Major
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-15-cv-01493)
District Judge: Honorable Lisa P. Lenihan
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 9, 2018

Before: JORDAN, RESTREPO and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: March 22, 2018)

———————

OPINION[*]

———————

PER CURIAM

Pro se appellant William Harris appeals from the District Court's order granting in part the defendants' motions to dismiss. For the reasons discussed below, we will affirm.

I.

Because we write primarily for the parties, we include only those facts necessary to reach our conclusion. Harris filed a complaint in November 2015 against twenty employees of the Pennsylvania Department of Corrections and Alice Maksin, a nurse practitioner at SCI-Fayette where Harris is incarcerated. In his amended complaint, Harris brought nine claims under 42 U.S.C. § 1983.

Harris alleged in claims 1 and 8 that, for a few days in March 2015, he was placed in cells with defective bedframes. Harris alleged in Claim 2 that, on one occasion in April 2015, he was forced to wear a pair of worn-out boots rather than his doctor-prescribed orthopedic boots during a painful quarter-mile walk between cells. Harris alleged that this conduct violated his Eighth Amendment rights.

In claim 3, Harris alleged that defendants Maksin and Berrier prevented him from working in the dietary department by placing in his medical file a work restriction barring him from working on wet floors because he wore elastic knee braces. Harris alleged that

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

this was racially discriminatory because they "allow a one-legged white amputee (above the knee) to work in dietary while wearing a prosthetic."

In claim 4, Harris alleged that defendants Skrobacz and Poska, SCI-Fayette employees, issued a retaliatory misconduct against him on March 18, 2015. Harris acknowledged that, at that time, he had recently been transferred from SCI-Somerset and "no grievance was yet processed at SCI-Fayette." Thus, Harris alleged that the misconduct was issued in retaliation for his prior grievances and a lawsuit he had filed while incarcerated at SCI-Somerset. Harris further alleged that defendants Smith and Wentzel denied him the opportunity to attend the disciplinary hearing for the March 18, 2015 misconduct. Harris alleged that he suffered various consequences from the misconduct, including the loss of personal property, loss of opportunity to be transferred within the prison system to his home region, and denial of a prison job for 60 days.

In Claim 5, Harris alleged that an unknown officer mistakenly delivered the wrong copies of his disciplinary hearing results. In Claim 6, Harris alleged that his above-mentioned transfer from SCI-Somerset to SCI-Fayette was in retaliation for the grievances he filed at SCI-Somerset.

In claim 7, Harris alleged that defendant Maksin placed his life in imminent danger by denying his prescribed hypertension medication for three days. Harris acknowledged that Maksin's denial was based on the fact that Harris had refused for months to be seen by Maksin, and that another doctor re-ordered Harris' medication once he was examined. Harris also alleged that defendant Berrier knew of Maksin's inaction and did nothing.

Last, in claim 9, Harris alleged that defendant House has refused to process various grievances filed by Harris.

The District Court granted in part the defendants' motions to dismiss, and dismissed all claims except claim 6 for retaliatory transfer. After discovery, the District Court entered summary judgment in favor of the remaining defendants based on Harris' failure to properly exhaust available administrative remedies. This appeal followed.[1]

II.

We have jurisdiction under 28 U.S.C. § 1291. We review de novo the District Court's decision to grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). Dismissal is appropriate if the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). We first "outline the elements a plaintiff must plead to state a claim for relief," then "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth," and assuming the veracity of the well-pled factual allegations that remain, "'determine whether they plausibly give rise to an entitlement to relief.'"

---

[1] In his brief to this Court, Harris stated that he is not appealing the District Court's entry of summary judgment in favor of the remaining defendants on claim 6 for retaliatory transfer. Nevertheless, we note that the District Court correctly entered summary judgment because Harris failed to properly exhaust available administrative remedies. See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 84 (2006). There is thus no genuine dispute of material fact and, under plenary review, it is clear that the moving defendants were entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a).

4

Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

III.

The District Court properly dismissed the bulk of Harris' claims under Federal Rule of Civil Procedure 12(b)(6). In claims 1 and 8, Harris failed to allege an Eighth Amendment violation based on defective bedframes. To state a conditions of confinement claim under the Eighth Amendment, the plaintiff must allege facts demonstrating that (1) he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the acts or omissions of the prison officials reflected deliberate indifference to the plaintiff's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Here, Harris failed to plausibly allege that the bedframes posed any risk of harm, let alone a substantial risk of serious harm. See Peterkin v. Jeffes 855 F.2d 1021, 1027 (3d Cir. 1988) (no Eighth Amendment violation where bedframes posed no risk of serious harm, based on lack of evidence of any injuries caused by bedframes).

In claims 2 and 7, Harris failed to allege an Eighth Amendment violation based on being deprived of his orthopedic boots and hypertension medication. To state an Eighth Amendment claim for deliberate indifference to his serious medical needs, see Estelle v. Gamble, 429 U.S. 97 (1976), "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his] medical needs' and (2) an objective showing that 'those needs were serious.'" Pearson v. Prison Health Svc., 850 F.3d 526, 534 (3d Cir. 2017) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). This Court has "found deliberate indifference in a variety of contexts including where…

5

knowledge of the need for medical care is accompanied by the intentional refusal to provide it…[and where] prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." Id. at 538.

Here, Harris sufficiently alleged that he has serious medical needs. See Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003) ("this Court has defined a medical need as serious if it has been diagnosed by a physician as requiring treatment"). But, Harris failed to allege that any defendant was deliberately indifferent to those needs. With respect to claim 2, Harris failed to plausibly allege that any specific defendant was aware of his need for orthopedic boots, let alone that any defendant intentionally refused to provide those boots during the one instance when Harris walked a quarter-mile without them. With respect to claim 7, Harris failed to plausibly allege that defendants Maksin and Berrier refused to provide his hypertension medication, prevented him from receiving treatment, or were otherwise deliberately indifferent to Harris' serious medical needs. See Pearson, 850 F.3d at 534. In fact, Harris' amended complaint alleges that he was the one who refused treatment from Maksin, which prevented Harris from renewing his prescription until he could be examined by another doctor within three days.

In claim 3, Harris failed to allege a violation of the Equal Protection Clause, based on his allegations that Maksin and Berrier discriminated against him by placing a restriction in his medical file that prevented him from working in the dietary department. Although inmates have no right to a particular job assignment while they are incarcerated, James v. Quinlan, 866 F.2d 627, 630 (3d Cir. 1989), prison officials may not discriminate against an inmate by making a job assignment on the basis of race. See

6

Cruz v. Beto, 405 U.S. 319, 321 (1972); see also Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991).

To state a valid equal protection claim, Harris must show that the defendants acted with purposeful discrimination. See Washington v. Davis, 426 U.S. 229, 239 (1976); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997), abrogated on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 539 (2006). The familiar *McDonnell Douglas* burden-shifting framework applies to equal protection claims of racial discrimination under 42 U.S.C. § 1983. See Stewart v. Rutgers, 120 F.3d 426, 432 (3d Cir.1997). Harris must first plausibly claim that he is a member of a protected class, that he was qualified and applied for the position, and that he was rejected in favor of someone who is not part of that class. Id.

Harris has done none of those things. He has not alleged that applied for a job in the dietary department, that he was qualified for the job, that the medical restriction prevented him getting the job, that Maksin and Berrier were racially motivated in placing the restriction in his file, or that they played any role in the decision to hire the white prisoner with a prosthetic leg. See Stewart, 120 F.3d at 432; Robinson, 120 F.3d at 1293. As the district court aptly concluded, the claim is entirely speculative.

In claim 4, Harris failed to sufficiently allege a First Amendment retaliation claim based on the March 18, 2015 misconduct filed by defendants Skrobacz and Poska. Harris must allege that the conduct provoking the alleged retaliation was constitutionally protected, that he suffered some "adverse action" at the hands of the prison officials "'sufficient to deter a person of ordinary firmness from exercising his [constitutional]

7

rights,'" and that the constitutionally protected conduct was a substantial or motivating factor in the defendants' conduct. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (alteration in original) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). Harris failed to allege that Skrobacz and Poska were even aware of his prior protected conduct at a different correctional institution, let alone plausibly allege that the prior conduct was a substantial or motivating factor in their decision to file the misconduct.

Harris also failed, in claim 4, to state a Due Process claim based on the denial of his right to attend his disciplinary hearing on the misconduct. Harris must allege the deprivation of a legally cognizable liberty or property interest without due process of law. See Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing Sandin v. Conner, 515 U.S. 472 (1995)). Here, Harris failed to allege that he was deprived of a protected liberty or property interest. His allegations relating to his loss of the opportunity to be transferred within the prison system to his home region, loss of personal property, and denial of a job for 60 days are insufficient to allege a protected interest. See generally Olim v. Wakinekona, 461 U.S. 238, 245–48 (1983) (prison transfers); Tillman v. Lebanon Cty. Corr. Fac., 221 F.3d 410, 422 (3d Cir. 2000) (deprivation of property); James, 866 F.2d at 630 (prison employment).

Finally, the District Court correctly determined that in claim 5, based on the alleged delivery of the wrong legal documents, and claim 9, based on alleged failures to process grievances, Harris failed to sufficiently articulate a legal theory or identify a defendant responsible for any conduct that plausibly states a claim to relief. See Iqbal, 556 U.S. at 679.

8

Accordingly, we will affirm the judgment of the District Court.