**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2482
_____

CLYDE ROMBACH, III

v.

PLUMBERS LOCAL UNION NO. 27 PENSION FUND,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:20-cv-01348)
District Judge: Honorable Mark R. Hornak
_____

Argued on September 9, 2025

Before: HARDIMAN, KRAUSE, and FREEMAN, *Circuit Judges*

(Filed: November 6, 2025)

Jacqueline S. McCollum    **[ARGUED]**
Steven E. Winslow  **[ARGUED]**
Jubelirer Pass & Intrieri
219 Fort Pitt Boulevard
1st Floor
Pittsburgh, PA 15222

    *Counsel for Appellants*

James T. Carney, II  **[ARGUED]**
845 Northridge Drive
Pittsburgh, PA 15216

John E. Stember
Stember Cohn & Davidson-Welling
425 First Avenue, 7th Floor
The Hartley Rose Building
Pittsburgh, PA 15219

Counsel for Appellees

_____

OPINION[*]

_____

KRAUSE, Circuit Judge.

Plumbers Local Union No. 27 Pension Fund (the Plan) appeals the District Court's

grant of summary judgment in favor of Clyde Rombach under the Employee Retirement

Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461. The District Court held that the

Plan's decision to suspend Rombach's early retirement benefits was arbitrary and

capricious, and it ordered the Plan to retroactively reinstate his benefits. We will affirm.

## I.      BACKGROUND

The basic facts of this case are undisputed. From 1989 to 2008, Rombach, a union

member, worked for W.G. Tomko, Inc. (Tomko) as a foreman and a Project Manager.

During that time, Tomko made contributions to the Plan on Rombach's behalf. In 2009,

Rombach was promoted to Senior Project Manager and left the union. This role included

the same job responsibilities as a Project Manager, plus some additional supervisory

responsibilities. But, because it was not a union job, Tomko ceased making Plan

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

contributions on his behalf. In 2016, while working as a Senior Project Manager, Rombach applied for early retirement benefits. The Plan determined that, while Rombach was eligible for early retirement, benefits would be suspended as long as he worked at Tomko as a Senior Project Manager.

Under the pension plan's terms, early retirement benefits are suspended during any month in which the beneficiary is "re-employed in the plumbing and pipefitting industry," meaning he is employed "(a) [i]n an industry in which any employees covered by the Plan were employed when [his] pension started, and (b) [i]n a trade or craft utilized in the industry, and (c) [i]n the geographic area covered by the Plan when [his] pension started." App. 82-83. The parties agree that Rombach's work as a Senior Project Manager satisfied the first and third criteria and disagree only as to whether Rombach was employed "[i]n a trade or craft utilized in the industry." App. 82. Rombach, claiming that his benefits were wrongfully suspended, sued under 29 U.S.C. § 1132. The parties cross-moved for summary judgment. The District Court denied the Plan's motion and granted summary judgment for Rombach. The District Court ordered the Plan to "take all steps necessary to reverse the financial and any other impact on Rombach of the benefits suspension," including the payment of "pension benefits, prejudgment interest, and post-judgment interest." App. 2.

The Plan timely appealed.

3

## II. DISCUSSION[1]

On appeal, the Plan advances three arguments: (1) that the Plan did not err in suspending Rombach's benefits, (2) that, even if the Plan did err in suspending benefits, the District Court should have remanded to the Plan with instructions to reconsider Rombach's benefits suspension, and (3) that the District Court erred by ordering the Plan to "reverse the financial and any other impact on Rombach" stemming from the suspension. App. 2. We disagree on all fronts.

### A. The Plan Erred in Suspending Rombach's Benefits.

When an ERISA pension plan grants its administrator discretionary authority to interpret the plan's terms, and the administrator interprets ambiguous terms, the administrator's interpretation is entitled to deference. *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir. 2012). A plan administrator's benefits determination is likewise entitled to deference when the plan grants the administrator discretionary authority to determine benefits eligibility. *Id.* at 120. But our deference only goes so far. We may disturb an administrator's determination when it is arbitrary or capricious, meaning that it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 121 (quoting *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011)). And when an administrator forfeits its privilege to exercise its discretion—for example, by

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331, and this Court has jurisdiction under 28 U.S.C. § 1291. We review the grant of summary judgment *de novo*. *See Hall v. Millersville Univ.*, 22 F.4th 397, 402-03 (3d Cir. 2022).

4

failing to explain its decision or to articulate its interpretation—we review the plan *de novo*. *See Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 & n.5 (3d Cir. 2002).

Here, the Plan's administrator has discretionary authority to interpret the Plan's terms and to determine eligibility for benefits. The term at issue here, "trade or craft," is ambiguous. But the Plan's benefits determination—hitched to its flawed interpretation of the phrase "[i]n a trade or craft utilized in the industry," App. 82—is not entitled to deference.

In suspending Rombach's benefits, the Plan stated only that "Mr. Rombach is employed '[i]n a trade or craft utilized in the industry' . . . because his current Senior Project Manager position with [Tomko] is a trade/craft utilized in the construction industry."[2] App. 43. This tautology does not supply an interpretation of "trade or craft," nor does it articulate the Plan's reasons for suspending Rombach's benefits. Because the Plan failed to interpret an ambiguous term, and because it did not explain why it suspended Rombach's benefits, we review its determination *de novo*.

The Plan did belatedly offer a rationale in its briefing, interpreting "trade or craft" to mean "occupation." *See* Opening Br. 9, 17-19. But our review is constrained to the record, and nothing in the record indicates that the Plan interpreted "trade or craft" to mean "occupation" when suspending Rombach's benefits. *Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n.5 (3d Cir. 2004). So we do not defer to this post-hoc rationale. *See, e.g.*, *Gritzer*, 275 F.3d at 296 & n.5; *Dwyer v. United Healthcare Ins. Co.*, 115 F.4th 640, 650

---

[2] The Plan also cited Section 12.03 of the pension plan in this discussion, which recounts the standard for suspension of retirement benefits.

(5th Cir. 2024) ("It is a bedrock proposition of ERISA law that we review the actual basis for the administrator's denial of benefits, not its post-hoc rationalization.") (citation modified). In any event, that rationale is arbitrary and capricious because "it renders . . . language in the Plan meaningless."[3] *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 795 (3d Cir. 2010) (citation modified).

Reviewing *de novo*, we conclude that the Plan erred in its benefits determination. The pension plan's terms state that, barring an exception for the terms "pay" and "compensation," it "will refer to things by their ordinary name[s]." App. 53. The pension plan became effective in 1999, so we look to contemporaneous dictionaries to determine the ordinary meaning of "trade" and "craft." Those dictionaries reveal that a "trade or craft" requires some amount of manual or artistic skill.[4] But the Senior Project

---

[3] The first benefits suspension criterion considers whether the beneficiary was employed "[i]n an industry in which any employees covered by the Plan were employed when [the] pension started." App. 82. Because employees covered by the Plan work as plumbers or pipefitters, this criterion will trigger whenever a beneficiary is re-employed in the plumbing or pipefitting industry. But the Plan's interpretation of the second criterion— i.e., re-employed in an "occupation" utilized in the industry—would *also* trigger whenever a beneficiary is re-employed in the plumbing or pipefitting industry, rendering the first criterion superfluous.

[4] *See, e.g.*, *Trade*, Webster's New World College Dictionary (4th ed. 1999) ("[A]n occupation requiring skill in any of certain kinds of work done with the hands, as distinguished from . . . a profession or business; craft . . . ."); *id.*, *Craft* ("[A]n occupation or avocation requiring special skills, especially manual ones, including carpentry, sewing, pottery, etc. . . . ."); *Trade*, The American Heritage Dictionary of the English Language (4th ed. 2001) ("An occupation, esp. one requiring skilled labor; craft."); *id.*, *Craft* ("A trade, esp. one requiring skilled artistry. . . . The membership of such a trade; guild.").

Manager position, which "operate[d] in a professional office environment," did not require any manual or artistic skill. App 46-47. So it was not a "trade or craft."[5]

## B. The Plan Forfeited its Argument that Remand Was the Appropriate Remedy.

By way of remedy, the District Court ordered the Plan to "take all steps necessary to reverse the financial . . . impact on Rombach of the benefits suspension." App. 2. That was error, according to the Plan, because the Court should have remanded the matter to the Plan for a new benefits determination. But the Plan did not present this argument in its summary judgment briefing before the District Court. Nor did the Plan ask the District Court to reconsider its conclusion as to remedy. The Plan therefore forfeited this argument. *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 146-47 (3d Cir. 2017). We may reach a forfeited argument in exceptional circumstances, *see id.*, but this case does not present such a circumstance.

## C. The Plan Forfeited its Argument that the District Court Erred in Ordering the Plan to Reverse the Impacts of the Suspension of Benefits.

The Plan also contends that the District Court's instruction that the Plan "reverse the financial and any other impact" of the suspension, App. 2, was in error "to the extent" it required the Plan to provide "relief above and beyond the suspended pension benefits and pre-/post-judgment interest," Opening Br. 33. Putting aside the Plan's failure to identify the specific relief it believes is unlawful, the Plan also failed to raise this

---

[5] To be sure, some contemporaneous dictionaries also employed definitions that support the Plan's interpretation of "trade or craft" as "occupation." *See Trade*, Webster's New World College Dictionary (4th ed. 1999) ("[A] means of earning one's living; occupation, work, or line of business . . . ."). But that interpretation is implausible for the reason discussed *supra*.

7

argument with the District Court, either in its summary judgment briefing or in a motion for reconsideration.  It is therefore forfeited.

*  *  *

For the foregoing reasons, we will affirm.